Reese, J.
delivered the opinion of the court.
The complainant is the widow and relict of the respondent’s testator, and one of the distributees of the estate of the late *52 Malinda Williams. The complainant after the death of her mother, Mrs. Williams, and during her minority, intermarried with John M. Kennedy, who, after no long time, departed this life, leaving the complainant, his widow, still a minor. During the marriage, Joseph L. Williams, the administrator of Malinda Williams, by his own act, without the co-operation of the other distributees, one of whom, like the complainant, was a minor, having no guardian, so far as appears, and without any final settlement or adjustment of his administration, and without any order or decree of a court, and without any writing, allotted the slaves, in the bill mentioned, to Kennedy and wife, and put them in their possession as a portion of the distributive share of the wife. The respondent, as executor of the husband, whose estate is largely involved in debt, being about to sell the slaves in question for the payment of those debts, the complainant files this her bill of injunction to restrain such sale, upon the ground that the administrator of Malinda Williams had no legal right to divest the title of the other distributees to the slaves in question, by his verbal allotment, and that the same, therefore, did not vest in the husband so as to be subjected to the satisfaction of his debts.
The general question raised by the record is, can an administrator legally transfer to one of several distributees, without the concurrence and co-operation of such other distributees, a portion of the slaves belonging to all of the distributees. The power of the administrator over the estate of the intestate is derived from the statute of distributions: he can, by that, take the assets into possession, convert chattels into money, collect and pay debts, and then distribute the surplus among the next of kin. Of what does this surplus consist? Of money almost ex m termini. Slaves out of the question, and the restrictions applicable to them in the act of 1827, let us take the case of a merchant dying intestate, and leaving money enough on hand to pay all his debts, can the administrator distribute the chattel property as the surplus of the estate, giving all the brandies to one child, all the cloths to another, and all the hardware to a third, reserving for himself, as one of the next of kin, something else, or give some of each to all, yard for yard and pound *53 for pound? The very idea is absurd. The statute comes and takes away from the administrator all power to sell slaves. What does it leave him? Power to distribute them? To give to one ten infant slaves, to another five adults, to a third ten old men, to the fourth ten old women? or to each of the four, eight slaves, and the three others to be ballolted for? Surely not. If he is not trusted to sell for the purpose of paying debts or distribution, or even when manifestly for the interest of the distributees, without a judgment or decree of court according to the provisions of the act of 1827, is he to be held,' by any implication of law, as authorized to allot, according to his arbitrary discretion, the several slaves to the several distributees, and make the important relation of master and slave, justas it may suit his judgment and caprice? The value of slaves depends upon physical strength, upon intellectual capacity, upon mental culture, upon moral worth, as fidelity, honesty, obedience, &c., and upon handicraft skill, in short upon a thousand things; it is only in the wretched market of the mere slave trader, that his value can be rated by pound avoirdupois. Does the law hold each administrator officially competent to do justice in the distribution of such chattels? Not so. Since the statute of 1827, at all events, his duty is to take care of the slaves for their equitable owners, the distributees, and of their heirs, and for this purpose he is clothed with the mere legal title; the distributees are joint equitable owners of all the slaves; in that character, all concuring and competent to act, they may, undoubtedly, without resort to a Court of Chancery, divide the property among themselves, with the assent of the administrator, and become separately entitled. But the efficacy of such a proceeding arises from their action and consent, and not from the act of the administrator, whose co-operation, indeed, is only necessary in such a case, because of his relation to creditors. In the absence of this concurrence of all, or of competency to concur in the act of division, though the parties seeking such division, whether administrator or distributees, must, as in all like cases, resort to a Court of Chancery for that purpose. What was done in the case before us, therefore, by the administrator, was done without authority of law; it did not legally *54 separate the slaves from the joint ownership of the other distri-butees; it did, not divest the title of such distributees; it did •not confer the title upon the wife, which had belonged to the •other distributees; it was in legal effect, a mere deposit of the ■slaves with Kennedy, and his actual possession was not a reduction to his legal possession of so much of the wife’s distributive portion. The interest which complainant has in the slaves in question as one of the distributees of Malinda Williams, deceased, and the interest which she has in the general administration of said estate will authorize her to file this bill against respondent, who has no right to sell them, to restrain such sale.
Let the decree below be affirmed.